UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL P. OLANDESE,

  Plaintiff,         Case No. 2:20-cv-12652
                District Judge Stephen J. Murphy, III
v.             Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.  Introduction

This is a social security case.  Plaintiff Michael P. Olandese (Olandese) brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 12, 15), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that Olandese's motion for summary judgment (ECF No. 12) be GRANTED IN PART and the

1

matter be REMANED to the administrative level for further proceedings and the
Commissioner's motion for summary judgment (ECF No. 15) be DENIED.

## II.  Background

### A.  Procedural History

Olandese was 63 years old at the time of his alleged onset date of March 30,
2018.  (ECF No. 10, PageID.87).  He worked as a millwright, janitor, Home Depot
employee, and a public service worker.  (*Id*., PageID.94).  He alleged disability due
to scoliosis, retrolisthesis, stenosis, and osteoarthritis.  (*Id*., PageID.87).

After Olandese's application was denied at the initial level on October 5,
2018 (*Id*., PageID.86-95), he timely requested an administrative hearing, which
was held on October 23, 2019, before Administrative Law Judge  (ALJ) Colleen
Mamelk.  (*Id*., PageID.68-85).  Olandese testified at the hearing, as did a
vocational expert.  (*Id*.).

Olandese testified that he lived by himself and was not currently working.
(*Id*., PageID.73).  He last worked for the city of Livonia as a public service worker.
(*Id*.).  The job required him to lift up to 50 pounds and stay on his feet most of the
day.  (*Id*., PageID.73-74).  He quit the job when his "back got too bad."  (*Id*.,
PageID.74).

Olandese experienced back pain, which he rated as a 3/10 on the day of the
hearing.  (*Id*., PageID.75).  The pain ranged from a 3/10 to a 4/10.  (*Id*.).  On May

8th and May 22nd, he underwent rhizotomies[1] which greatly reduced his back pain level.  (*Id*., PageID.76).  Before the rhizotomies, his pain ranged from a 6/10 to a 7/10.  (*Id*.).  He was not currently prescribed pain medication.  (*Id*.).  However, he indicated that he felt like his back was "getting worse" and that he would need to return to the doctor for treatment.  (*Id*., PageID.77).  On approximately two or three days each month, he experienced elevated pain in his back.  (*Id*., PageID.79).

Olandese was able to walk approximately three to four blocks.  (*Id*., PageID.78).  He was able to sit for three to four hours and stand for one to two hours with discomfort.  (*Id*.).  He could lift and carry about 10 pounds.  (*Id*.).

On November 15, 2019, the ALJ issued a written decision finding that Olandese was not disabled.  (*Id*., PageID.55-63).  On August 6, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id*., PageID.44-48).  Olandese timely filed for judicial review of the final decision.  (ECF No. 1).

B.    Medical Evidence

---

[1] "Rhizotomy is a minimally invasive surgical procedure to remove sensation from a painful nerve by killing nerve fibers responsible for sending pain signals to the brain.  The nerve fibers can be destroyed by severing them with a surgical instrument or burning them with a chemical or electrical current.  In most cases, rhizotomy provides immediate pain relief that can last up to several years until the nerve recovers and is able to transmit pain again."
https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/rhizotomy
(Last visited January 10, 2022).

On February 5, 2018, orthopedic spine surgeon Andres Munk, M.D. examined Olandese's back.  (ECF No. 10, PageID.277-278).  Olandese reported that back pain occurring three years earlier responded well to a Medrol Dosepak.  (*Id.*, PageID.277).  Olandese reported that the recent pain flare up had begun approximately two weeks before his appointment.  (*Id.*).  Dr. Munk observed "generalized tenderness about the midline and paraspinous musculature, more predominately on the left than the right."  (*Id.*).  A straight leg raise was negative.  (*Id.*).  X-rays "show[ed] maintenance of lordotic curvature."  (*Id.*, PageID.278).  X-rays also showed "disc space narrowing at L4-L5 but most predominately at L5-S1."  (*Id.*).  Dr. Munk prescribed a Medrol Dosepak and recommended an MRI if symptoms did not improve.  (*Id.*).

At a follow up appointment on March 12, 2018, Olandese reported that lumbar pain had previously resolved with physical therapy.  (*Id.*, PageID.275-276).  He reported that the pain had flared up in the last month in his low back and left buttock.  (*Id.*, PageID.275).  The Medrol Dosepak prescribed the previous month "helped to calm things down a bit," but he continued to experience pain.  (*Id.*).  An MRI of the lumbar spine, performed on March 7, 2018,[2] showed "some scoliosis with retrolisthesis at L1-L2, L2-L3, and L3-L4" and "spinal stenosis with disc herniations and foraminal stenosis at multiple levels."  (*Id.*).  Dr. Munk noted that

---

[2] The MRI report is available in the record at ECF No. 10, PageID.292-293.

"[i]t [did] appear that L3-4 may be left-sided which would explain [the] recent symptoms." (*Id*, PageID.275). Overall, the MRI showed "[s]ignificant lumbar degeneration with disc herniations, suspected acute at L3-4." (*Id*.). Dr. Munk recommended a formal course of physical therapy. (*Id*.).

On March 27, 2018, Olandese was seen by Anthony J. Oddo, D.O. for evaluation of his back pain. (*Id*., PageID.273-274). He reported that the pain was "primarily on the left side of the low back" and intermittently sharp, and aching. (*Id*., PageID.273). Olandese rated the pain as a 4/10 and reported that he occasionally treated it with Advil. (*Id*.).

On physical examination, Dr. Oddo found that Olandese had a "reasonable gait" and was "able to go on his toes and heel." (*Id*.). Dr. Oddo observed "mild tenderness in the left lumbar paraspinal musculature" and "more pain with extension." (*Id*.). He also noted that "[f]acet loading testing on the left side [was] positive for symptoms" but a negative straight leg raise. (*Id*.).

Dr. Oddo noted chronic pain, low back pain, lumbar degenerative disc disease, lumbar spondylosis, scoliosis, and some degree of stenosis. (*Id*.). Dr. Oddo noted "primarily axial pain" and recommended physical therapy as "a reasonable starting point." (*Id*.).

On April 24, 2018, Brittany Miller, PA-C evaluated Olandese's back condition, noting that he was approximately halfway through a course of physical

therapy.  (*Id.*, PageID.272).  (*Id.*).  She observed that Olandese was able to

ambulate independently, but still had "paraspinal tenderness."  (*Id.*).  She

concluded that Olandese's "back [was] coming along and improving."  (*Id.*).  She

planned for a return visit after Olandese completed physical therapy.  (*Id.*).

On May 14, 2018, Dr. Munk examined Olandese, noting a history of

"[l]umbar degeneration with varying degrees of stenosis and radiculopathy." (*Id.*,

PageID.271).  He noted that Olandese responded "quite well" to both physical

therapy and steroid packs.  (*Id.*).  Olandese reported that he had been improving

until the day before when he suffered "a flare up of back pain radiating into the left

buttock."  (*Id.*).  The pain increased with activity and was "relatively constant."

(*Id.*).

Dr. Munk's physical examination showed good strength, intact sensation,

and a negative straight leg raise resulting from multilevel lumbar degeneration,

lumbar radiculopathy, and foraminal stenosis.  (*Id.*).  Dr. Munk prescribed another

steroid pack and continued physical therapy.  (*Id.*).  He opined that epidural

injections were  "a last resort" and that surgical intervention "would be challenging

. . . due to [the] multilevel nature of the disease."  (*Id.*).

Dr. Munk's July 9, 2018 examination records note Olandese's condition was

"pretty much stable and plateaued" after completing physical therapy and a Medrol

Dosepak.  (*Id*., PageID.302).  Olandese reported that he was doing exercises at home.  (*Id*.).

 Dr. Munk's November 12, 2018 records note Olandese's report that the low back pain was "slightly improved" from the previous visit.   (*Id*., PageID.367-368).  Olandese  reported "daily pain" and felt that physical therapy had most improved his leg pain.  (*Id*., PageID.367).   He inquired about injections.  (*Id*.).  Dr. Munk's examination notes showed "mild tenderness to palpitation midline and paraspinals."  (*Id*.).  He recommended that Olandese follow up with Dr. Oddo regarding treatment with injections.  (*Id*., PageID.368).

On November 13, 2018, Dr. Oddo examined Olandese, noting Olandese's report of "significant pain across the back" despite completing physical therapy.  (*Id*., PageID.362-363).  Olandese reported that pain was worse on the left side.  (*Id*., PageID.362).  Dr. Oddo noted mild "tenderness in the lumbar spine paraspinals" and that Olandese experienced "[a] lot more pain with extension than flexion."  (*Id*.).  On November 28, 2018, Dr. Oddo performed a medial branch block.  (*Id*., PageID.357).

On December 11, 2018, Olandese reported a "dramatic relief in his pain" until the Saturday before his appointment at which point he "start[ed] to get some left-sided low back pain."  (*Id*., PageID.353).  Olandese reported that he was able to relieve the pain with an Advil and rated the pain as a 1/10.  (*Id*.).  Dr. Oddo

7

recommended proceeding with the next lumbar medial branch block.  (*Id.*, PageID.354).

On January 2, 2019, Dr. Oddo performed a medial branch block.  (*Id.*, PageID.351).  On January 15, 2019, Olandese reported to Dr. Oddo that November 28, 2018 and January 2, 2019 medial branch blocks had led to "dramatic relief" and that he was no longer experiencing back pain.  (*Id.*).

On April 8, 2019, Olandese reported to Dr. Munk that the bundle branch blocks were wearing off.  (*Id.*, PageID.342).  Dr. Munk recommended that Olandese return to Dr. Oddo for pain management.  (*Id.*).

On April 16, 2019, Olandese reported to Dr. Oddo that although he had improvement after medial branch blocks were done, the pain had returned.  (*Id.*, PageID.336-337).  Dr. Oddo observed "tenderness in the lumbar paraspinals and a lot of pain with extension."  (*Id.*).  He recommended proceeding with a rhizotomy.  (*Id.*, PageID.337).

On May 8, 2019, and May 22, 2019, Dr. Oddo performed rhizotomies.  (*Id.*, PageID.333-334).

On June 11, 2019,  Dr. Oddo noted that Olandese was "doing great" and that he was "very happy . . . with the results of the rhizotomy."  (*Id.*, PageID.331-332).  Olandese reported "a lot of relief" and indicated that he was "very pleased with the

results up to [that]  point." (*Id.*, PageID.331).  Olandese nonetheless reported

soreness after activity  (*Id.*).

   III. Framework for Disability Determinations (the Five Steps)

   Under the Act, DIB is available only for those who have a

"disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Olandese was not disabled under the Act. At Step One, the ALJ found that Olandese had not engaged in substantial gainful activity since March 30, 2018 (alleged onset date). (ECF No. 10, PageID.60). At Step Two, the ALJ that Olandese did not have any severe impairment. (*Id*., PageID.60-63). As a result, the ALJ did not proceed through the remaining three steps and concluded that Olandese was not disabled under the Act. (*Id*., PageID.63).

IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

12

right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

## V.      Analysis

Olandese's entire argument is that the ALJ's finding that he did not have any severe impairments was not supported by substantial evidence.  Olandese requests summary judgment in his favor or a remand for further proceedings.  The Commissioner argues that the ALJ's finding at Step Two is substantially supported by the evidence.

At Step Two, an "impairment or combination of impairments . . . [is] found 'not severe' . . . when medical evidence establishes only a slight abnormality or [ ] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28, 1985 WL 56856, *3 (1985). "In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'"  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "The goal of the test is to 'screen out totally groundless claims.'"  *Id.*  (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).  20 C.F.R. §§ 404.1522(a) and 416.922(a) define a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28, supra, at *3 ("Basic work activities" refers to "walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "seeing, hearing, and speaking;" and the capacity for "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and, "[d]ealing with changes in a routine work setting"). *Id.* "[T]he term 'significantly' is liberally construed in favor of the claimant." *Wilder v. Berryhill*, No. 1:17CV2609, 2019 WL 1428215, at *4 (N.D. Ohio Mar. 29, 2019).

Here, the ALJ found that Olandese had the medically determinable, but non-severe, impairment of degenerative disc disease of the lumbar spine with stenosis and retrolisthesis. (ECF No. 10, PageID.60). In doing so, the ALJ reviewed Olandese's course of treatment for low back pain that began in February 2018. (*Id.*, PageID.62). The ALJ listed the findings of the MRI and discussed Olandese's treatment with Dr. Oddo and Dr. Munk. (*Id.*, PageID.62-63). The ALJ appears to have given great weigh to Dr. Oddo's notes following Olandese's rhizotomies. (*Id.*).

To be sure, in his June 11, 2019 treatment notes, Dr. Oddo wrote that Olandese was "doing great" and that he was "very happy . . . with the results of the rhizotomy." (*Id.*, PageID.332). Olandese reported "a lot of relief" and indicated that he was "very pleased with the results up to this point." (*Id.*, PageID.331). However, Dr. Oddo also noted that Olandese did report soreness after activity that

14

seemed muscular.  (*Id*.).  Olandese was directed to follow up after five months.

(*Id*., PageID.332).  At the time of the hearing before the ALJ in October, Olandese

was not yet due for his follow up appointment with Dr. Oddo.

Even though Olandese was not yet due for a follow up appointment with Dr.

Oddo and Dr. Oddo himself never referred to the relief Olandese experienced from

the rhizotomies as permanent, the ALJ determined that Olandese was not disabled

because he had "responded extremely well to treatment and remain[ed] free of

prescribed medication."  (*Id*., PageID.63).  Dr. Oddo's own notes contradict the

ALJ's contention that the rhizotomies would provide permanent relief as he wrote

that he intended to "see how long this lasts," referring to Olandese's pain relief

after the rhizotomies.  (*Id*., PageID.33).

Furthermore, even if the ALJ was correct and Olandese's condition resolved

in May/June of 2019, she nonetheless failed to consider whether he was disabled

for any closed period of 12 months or more.  *See Turk v. Comm'r of Soc. Sec.*, 647

F. App'x 638, 641 (6th Cir. 2016) ("A claimant no longer qualifying as disabled

may be entitled to benefits if she previously suffered a disability for a continuing,

twelve-month period.").  The period between March 2018 (alleged onset date) and

May/June 2019 exceeds 12 months.

The ALJ also found that while Olandese's "medically determinable

impairments could reasonably be expected to produce the alleged symptoms;

15

[Olandese's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." (*Id*., PageID.62).  Despite this finding, the ALJ did not specify the inconsistencies she found between Olandese's testimony and the medical record.

Olandese testified that he experienced back pain, which he rated as a 3/10 on the day of the hearing.  (*Id*., PageID.75).  The pain typically ranged from a 3/10 to a 4/10.  (*Id*.).  While the rhizotomies had reduced his pain significantly, Olandese indicated that he felt like his back was "getting worse" and that he would need to return to the doctor for treatment.  (*Id*., PageID.77).  On approximately two or three days each month, Olandese experienced elevated pain in his back.  (*Id*., PageID.79).  Olandese further testified that he was able to walk approximately three to four blocks.  (*Id*., PageID.78).  He was able to sit for three to four hours and stand for one to two hours with discomfort.  (*Id*.).  He could lift and carry about 10 pounds.  (*Id*.).  None of Olandese's testimony is directly contradicted by the record, and the ALJ did not explain where the inconsistencies between Olandese's testimony and the medical record lie.

The Commissioner, relying on *Edward v. Comm'r of Soc. Sec.*, No. 12-15153, 2014 WL 354655, at *12 (E.D. Mich. Jan. 31, 2014), argues that the ALJ could not have relied on Olandese's subjective complaints when making her Step Two determination.  In *Edwards*, the court stated, "In considering whether a

16

claimant has a severe impairment, an ALJ must not accept unsupported medical opinions or a claimant's subjective complaints." *Id.* at *12 (internal quotations and citation omitted).  The court found that "plaintiff's testimony, standing alone, is insufficient to establish that the ALJ erred in finding that plaintiff's leg and ankle impairments were not severe." *Id.* at *13.  In this case, however, Olandese's testimony does not stand alone.  It is supported by imaging, including a March 2018 MRI, and treatment records showing that Olandese received physical therapy, medial branch blocks, and rhizotomies to treat his low back pain.

In addition to the records of Olandese's treating physicians and his testimony, there is also the opinion of Loren Levy, M.D.,[3] which the ALJ found unpersuasive because the examination occurred before Olandese's most recent treatments.[4]  Under new regulations, specifically 20 C.F.R. § 404.1520c(b), the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."

---

[3] Dr. Levy's conclusions were as follow: "Claimant has severe MDI DDD lumbar spine (includes retrolisthesis, stenosis, arthritis facet joints and disc herniation L3-4).  Gait is nl, no AD, -SLR.  ADLS note ability to do light chores, lift 15-20 lbs, mow lawn.  Claimant's statements are generally consistent with the MER.  There are no MSOs.  Client communication – denies seeking treatment for knee pain for several years."  (ECF No. 10, PageID.93).  Dr. Levy limited Olandese to light work.  (*Id.*, PageID.91-92).  Essentially, Dr. Levy found the presence of severe impairments, contrary to the ALJ's determination.  See *id.*, PageID.93).
[4] The last record Dr. Levy reviewed was from July 9, 2018.  (ECF No. 10, PageID.93).

17

The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c). Supportability and consistency are the most important factors and the ALJ must explain how she considered these factors in her decision. § 404.1520c(b)(2). Other than stating that she found Dr. Levy's opinion unpersuasive, the ALJ gave the court little to consider when evaluating whether she met the requirements under the new regulations. The ALJ, for example, did not determine if Dr. Levy's opinion found support in the record.

The Commissioner also argues that because Olandese's pain was *temporarily* eliminated after he received medical branch blocks in late 2018 and early 2019 that he did not experience significant limitations for a continuous period of 12 months, and thus, did not meet the 12-month durational requirement for a disability finding. This argument is unavailing. While Olandese did report in January 2019, that his back pain had subsided, it quickly returned and by April 2019, he was seeking additional treatments for his back pain. After looking at the record as a whole, it is clear that Olandese's spine issues and the resulting pain were chronic.

Further, it is important to note that at the time of his alleged onset date of March 30, 2018, Olandese was 63 years old and considered "advanced age" under the Social Security regulations.  20 C.F.R. § 404.1563(e).  At this age, the Social Security Administration assumes that the individual's age significantly affects their ability to adjust to other work.  20 C.F.R. § 404.1563(e).  Specifically, the regulation states that:

> for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

20 C.F.R. Part 404, Subpart P, Appendix 2, Section 202.00(c).  *See Buffa v. Saul*, No. 19-13282, 2021 WL 646199, at *9 (E.D. Mich. Jan. 25, 2021) ("A remand for further fact-finding is particularly critical given that Plaintiff was 64 at the time of the ALJ's decision…."), *report and recommendation adopted*, 2021 WL 634622 (E.D. Mich. Feb. 18, 2021).

In recommending a remand for further fact-finding, the undersigned notes that "[a] severity analysis is not a high hurdle, but rather a mechanism for weeding out baseless claims." *Hellebrand v. Comm'r of Soc. Sec.*, No. 5:19-cv-02382, 2021 WL 911717, at *3 (N.D. Ohio Mar. 10, 2021).  Olandese's claim for DIB is not baseless.  He has a documented history of treatment for significant back pain.  His

pain was supported by objective imaging results.  Accordingly, a remand is

warranted in this case.

VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that Olandese's

motion for summary judgment (ECF No. 12) be GRANTED IN PART and the

matter be REMANDED to the administrative level for further proceedings and the

Commissioner's motion for summary judgment (ECF No. 15) be DENIED.


Dated: January 14, 2022                       s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                     United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

20

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 14, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager